**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 6102 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| FOREST PARK POLICE OFFICER | ) | |
| YOUNG LEE and VILLAGE OF | ) | |
| FOREST PARK, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff has sued the Village of Forest Park and one of its police officers, Young Lee, for their alleged violations of her constitutional rights, Title VII and the Illinois Gender Violence Act and for assault and battery. The Village has filed a Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment on the claims plaintiff asserts against it.[1] For the reasons set forth below, the motion is granted in part and denied in part.

**Facts**

In early February 2011, when plaintiff was nineteen years old, she started an internship with the Village of Forest Park Police Department. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 1.) As an intern, she was supervised by Lieutenant Weiler, and spent half of her time observing various aspects of police work and the other half doing clerical work. (*Id.* ¶¶ 4-5; Def.'s LR 56.1(a) Stmt., Ryan Dep. at 119-20; *id.*, Weiler Dep. at 54.) Defendant Lee, who is a tactical detective, was one of the officers with whom plaintiff worked. (Def.'s LR 56.1(a) Stmt., Doe Dep. at 211; *id.*, Lee Dep. at 6-7.)

---

[1]Defendant Lee has not moved for summary judgment.

Lee is also the program coordinator for the department's liquor enforcement program. (*Id.*, Keating Dep. at 62; *id.*, Lee Dep. at 59-60.) As such, he recruited participants for alcohol stings, *i.e.*, attempts by minors to purchase alcohol from liquor stores and bars. (*Id.*, Keating Dep. at 44-46; *id.*, Lee Dep. at 61-62.) Sometime in late February or early March 2011, Lee asked plaintiff, and she agreed, to participate in the program. (*Id.*, Lee Dep. at 62-63.) In exchange, the Village agreed to reduce the amount she owed in parking tickets by $20.00 per sting. (*Id.*, Doe Dep. at 109-10.)

On March 30, 2011, plaintiff says that Lee, under the guise of performing an alcohol sting, took her to two bars, bought her alcoholic drinks, and when she was highly intoxicated, had sex with her without her consent. Defendant contends that Lee, with whom plaintiff had become friendly during her internship, invited her to go out after work, the two consumed some alcoholic drinks, though not to the point of intoxication, and later had consensual sex.

On April 8, 2011, plaintiff reported the alleged assault and quit working for the Village. This suit followed.

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Counts I-III, plaintiff asserts 42 U.S.C. § 1983 claims against the Village for violations of her Fourth and Fourteenth Amendment rights. The Village can be held liable under § 1983 only if if there is evidence to suggest that the alleged constitutional violations resulted from the execution of one of its policies. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). A "policy," in this sense, includes a practice so widespread and permanent that it has the force of law. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). The existence of a widespread practice can be inferred from evidence that policymaking officials knew about and acquiesced to the practice. *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1993); *see Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006) (" It is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once. The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision."). The Mayor of Forest Park has policymaking authority for the police department. *See* Park Forest Municipal Code § 1-4-3-1(B)(7), (C) (stating that the Mayor, as Commissioner of the Department of Public Affairs, "shall have jurisdiction and supervision of the police department" and "shall make and enforce such rules and regulations . . . as may be necessary to secure [its] efficient conduct"); *see also Waters v. City of Chi.*, 580 F.3d 575, 581 (7th Cir. 2009) ("State or local law determines whether a person has policymaking authority for purposes of § 1983."). Thus, to prevail on this motion, plaintiff must offer evidence that suggests the mayor knew police officers were not adequately trained about or disciplined for sexual misconduct and did nothing to remedy the problem.

It is undisputed that the Village has an employee handbook that applies to police officers and states:

> A working environment that is free from any form of sexual harassment is essential ans shall be maintained. It will be a violation of Village policy for any employee to harass another in the work place. Violation of this policy shall be considered grounds for disciplinary action.
>
> . . . .
>
> "Sexual harassment" consists of unwelcome sexual advances, requests for sexual favors, and other inappropriate verbal or physical conduct of a sexual nature when made by any employee to another employee when:
> 1. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, or when
> 2. Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting that individual, or when
> 3. Such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

(Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 8); *see* Forest Park Ordinance No. O-46-49, *available at* http://www.forestpark.net/pdf/Agendas/Agenda%202009/Agenda071309.pdf; Minutes of Forest Park July 27, 2009 Council Meeting (noting approval of Ordinance O-46-09), *available at* http://www.forestpark.net/pdf/Agendas/Agenda%202009/Agenda072709.pdf. It is also undisputed that the Village conducts sexual harassment training annually, Lee attended that training each year from 2007-12 and sexual harassment and proper officer conduct is discussed at police department staff meetings. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 7-8.) Given this undisputed evidence, and the dearth of evidence to counter it, plaintiff has not raised a triable issue of fact as to whether the Village inadequately trains its police officers about sexual misconduct.

Alternatively, plaintiff alleges that the Village knew about and failed to remedy sexual misconduct by police. There is no dispute that Police Chief Ryan's predecessor was fired in 2003

4

for sexual harassment. (*See* Def.'s LR 56.1(a) Stmt., Ryan Dep. at 5-6, 85-86.) It is also undisputed that two officers, in addition to Lee, have been accused of sexual misconduct during Ryan's tenure: Officer Kozak, who was accused of sexual assault, and Officer Brooks, whom several Village employees accused of sexual harassment. (*Id.* at 71-72, 100-02.) However, the record also establishes that at Ryan's request, the Illinois State Police investigated the charge against Kozak, and though it determined that the encounter had been consensual, Ryan still suspended Kozak for thirty days without pay because his conduct had discredited the department. (*Id.* at 32-34, 72.) The record also shows that Ryan investigated the complaints against Brooks, determined they were meritorious, and fired him. (*Id.* at 100-02.) Plaintiff offers no evidence that suggests Ryan ever ignored a complaint of sexual misconduct, let alone that he did so routinely, or that the mayor acquiesced to such a practice. Thus, plaintiff has not raised a fact triable issue as to whether the Village had a policy of ignoring allegations of sexual misconduct.

Because the record, viewed favorably to plaintiff, does not support the inference that her alleged injuries were caused by a municipal policy, the Village is entitled to judgment as a matter of law on plaintiff's § 1983 claims. The Court, therefore, grants its motion for summary judgment on Counts I-III.

In Count IV, plaintiff asserts that the Village is liable under Title VII for sexual harassment. The Village argues that plaintiff was not its employee for the purposes of that statute, and thus it cannot be liable on this claim. Title VII does not meaningfully define the term "employee." *See* 42 U.S.C. § 2000e(f) (stating that "'employee' means an individual employed by an employer"). But the Seventh Circuit has distilled five factors from the common law of agency that are relevant to making the "employee" determination:

5

> "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations."

*Mazzei v. Rock N Around Trucking, Inc.*, 246 F.3d 956, 963 (7th Cir. 2001) (quoting *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.3d 377, 378-79 (7th Cir. 1991)); *see Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992) (stating that agency law should be used to flesh out this definition of employee). Though "all of the incidents of the relationship must be assessed and weighed," the *Mazzei* court said "the employer's right to control is the most important [factor.]" *Id.* (quotations omitted).

The focus on employer control makes sense in *Mazzei* and *Darden* because the issue was whether a worker was an independent contractor or an employee. *See Darden*, 503 U.S. at 321; *Mazzei*, 246 F.3d at 959. However, when, the issue is whether an unpaid worker is an employee or a volunteer, as in this case, the employer control factor has limited relevance. *See Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 220 (4th Cir. 1993) ("Control loses some of its significance in the determination whether an individual is an employee in those situations in which compensation is not evident."). Consequently, as one court has noted, applying the Seventh Circuit's five factors in this context is "like using a screwdriver when the job calls for a wrench." *Holder v. Town of Bristol*, No. 3:09-CV-32 PPS, 2009 WL 3004552, at *3 (N.D. Ind. Sept. 17, 2009).

The Seventh Circuit has not yet to address whether, or the extent to which, the five factors should be used to distinguish between an employee and a volunteer. But other circuits have decided that another factor – the existence, amount and kind of compensation received by the worker – is

6

relevant to, if not dispositve of, the issue. *See Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 656 F.3d 348, 353-54 (6th Cir. 2011) (stating that receipt of compensation is a factor to be considered in determining whether plaintiff is an employee but not a prerequisite to employee status); *Waisbgerber v. City of L.A.*, 406 Fed. Appx. 150, 151 (9th Cir. 2010) (same); *Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1243 (11th Cir. 1998) ("We believe . . . that only individuals who receive compensation from an employer can be deemed 'employees' under [Title VII]."); *O'Connor v. Davis*, 126 F.3d 112, 115-16 (2d Cir. 1997) ("Where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist . . . ."); *Haavistola*, 6 F.3d at 222-23 (holding that a jury must decide whether the non-monetary benefits plaintiff received were sufficient to make her an employee not a volunteer); *Graves v. Women's Prof'l Rodeo Ass'n, Inc.*, 907 F.2d 71, 73 (8th Cir. 1990) (stating that compensation in exchange for services is central to an employment relationship). With these principles in mind, the Court turns to the facts of this case.

Though neither part makes this argument, the record strongly suggests that plaintiff worked for the Village in two different capacities, as an intern and as a participant in the alcohol stings. Plaintiff applied for the internship, was interviewed for the position by Chief Ryan, Deputy Chief Aftanas and Lieutenant Weiler, started in February 2011, received no pay and was supervised by Weiler. (Def.'s LR 56.1(a) Stmt., Doe Dep. at 67-68, 82; *id.*, Ryan Dep. at 119-20; *id.*, Weiler Dep. at 51-56, 164.) In contrast, plaintiff was recruited for the sting program by Lee when she was already working as an intern, started to do stings in March 2011, was supervised on the stings by Lee and was compensated by the Village for that work. (*Id.*, Lee Dep. at 62, 127; Ryan Dep. at 121-22; *id.*, Doe Dep. at 67, 109-110; *id.*, Keating Dep. at 56, 62; *see id.*, Weiler Dep. at 239-44 (testifying

7

that "the stings had nothing to do . . . with [the] internship" and were "independent of the internship")). Given that plaintiff appears to have had two separate "jobs" with the Village, the Court will determine whether either one arguably gave her Title VII "employee" status.

With respect to the internship, the record, viewed in plaintiff's favor, shows that: (1) the Village did not compensate her in any way for her work; (2) she spent half of her time observing different aspects of police work and the other half performing clerical tasks; (3) plaintiff scheduled her internship work around her paid job at a restaurant; (4) she discussed with Weiler "when [she] would come in," but "kind of came and went . . . as she wanted"; and (5) there was no set end date for the internship, but plaintiff planned to leave when she went back to college in either the summer or fall of 2011. (*Id.*, Weiler Dep. at 58, 160-64; *id.*, Doe Dep. at 67-68, 83-84; *id.*, Ryan Dep. at 119-20, 147-48; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 2-4.) These characteristics are more like those of a volunteer than an employee. *Compare Jacob-Mua v. Veneman*, 289 F.3d 517, 521 (8th Cir. 2002) (holding that a volunteer researcher who "was not paid, did not receive annual and sick leave benefits or coverage under any federal retirement program, . . . was not entitled to merit promotion, holiday pay, insurance benefits, or competitive status" and had signed an 'Agreement for Individual Voluntary Services' that said her work would be noncompensable" was not a Title VII employee), *abrogated on other grounds*, *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011), *with Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1234-35 (11th Cir. 2004) (graduate student whose work in the university's lab was primarily done to satisfy the requirements of her graduate program but was governed by a collective bargaining agreement and given a stipend, employee benefits, sick leave and annual leave was a Title VII employee), *and United States v. City of N.Y*, 359 F.3d 83, 92-94 (2d Cir. 2004) (allegations that the city "completely controlled" plaintiffs' work in its welfare-to-

work program, gave them workers compensation coverage and food stamps, made cash payments to them and paid their transportation and child care expenses in return for their work adequately alleged Title VII employee status). Thus, plaintiff was not a Title VII employee when she worked as an intern.

With respect to plaintiff's work on the alcohol stings, the record suggests that: (1) the Village compensated her by reducing her parking ticket fines from $3,450.00 to $400.00 and giving her a $20.00 credit toward that amount for every hour she worked; (2) plaintiff signed a guidelines sheet that states "participation in the Liquor Enforcement Program is considered as temporary employment" and will be terminated if the guidelines are violated; (3) Lee trained plaintiff in alcohol sting procedures; (4) plaintiff used money supplied by the Village to perform alcohol stings; (5) plaintiff had workers compensation coverage when she did stings; and (6) Lee controlled whether, when and where plaintiff would perform alcohol stings. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 1-5; *id.*, Ex. O, Liquor Enforcement Program Youth Participant Guidelines; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 24, 26; Def.'s LR 56.1(a) Stmt., Doe Dep at 112-20, 172-76.) This evidence is sufficient to raise a triable issue of fact as to whether plaintiff was a Village employee when she did stings.

Even if plaintiff were an employee, the Village argues that any alleged harassment is not actionable because it occurred outside the work place. *See Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009) (stating that plaintiff must prove, among other things, that her work environment was objectively and subjectively offensive to prevail on Title VII sex harassment claim). "But harassment does not have to take place within the physical confines of the workplace to be actionable; it need only have consequences in the workplace." *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008). As the Seventh Circuit said in *Doe v. Oberweis Dairy*:

9

> Title VII is limited to employment discrimination, and therefore sexual harassment is actionable under the statute only when it affects the plaintiff's conditions of employment.
>
> The sexual act need not be committed in the workplace, however, to have consequences there. . . . But at the very least the harassment must . . . be an episode in a relationship that began and grew in the workplace. Had Nayman met Doe on the last day of either his or her employment at the ice cream parlor and later asked her for a date that eventually culminated in sexual intercourse, the connection to the workplace would have been too attenuated to constitute workplace harassment. It would have been no different from his asking a customer for a date.
>
> But that is not what happened. The relationship began with flirtatious talk and erotic touching in the workplace and continued there for nine months before Nayman and Doe had sex. Nor did it end with their sexual encounter. She continued working at the ice cream parlor in close proximity with her harasser – indeed under his supervision – after the statutory rape, though for less than two weeks. Because her consent to have sex with Nayman was, as a matter of law, ineffectual, this is a case of a worker subjected to nonconsensual sex by a supervisor . . . during, as well as arising from, the employment relation. That is a sufficiently strong case of workplace sexual harassment to withstand summary judgment.

456 F.3d 704, 715-16 (7th Cir. 2006) (citations omitted).

Viewed favorably to plaintiff, the record shows that: (1) plaintiff started the internship in early February 2011; (2) she worked more closely and more often with Lee than anyone else, and he told her when to free up her schedule so she could work with him; (3) plaintiff called Lee for rides when she did not have a car, and they went to restaurants together ten to fifteen times; (4) sometime in March 2011, Lee recruited plaintiff for the sting program; (5) on March 17, 2011, while Lee was on duty, he drove her and a friend to a restaurant and, several hours later, drove them back to plaintiff's apartment; (6) Lee told plaintiff they were going to do an alcohol sting on March 30, 2011; (7) Lee was on-call that night, which meant that he had to respond to police incidents if called, and he was wearing his badge and had his gun and police vest in his car; (8) Lee told plaintiff to drive to a bar, bought her alcoholic drinks and, when she was highly intoxicated, had sex with her

without her consent; and (9) the alleged assault caused Doe to quit working at the police department. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 11-12, 14, 16, 55, 64-65; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 2, 9-11, 26-27, 34-35; Def.'s LR 56.1(a) Stmt., Lee Dep. at 61-62; *id.*, Doe Dep. at 67, 191, 225-26.) This evidence is sufficient, under the reasoning of *Oberweis Dairy*, to create a material issue of fact as to whether there was workplace harassment.

Finally, the Village argues that it is entitled to judgment on the Title VII claim because Lee was plaintiff's co-worker, not her supervisor, and the Village was not negligent in failing to discover and remedy the harassment. *See Vance v. Ball State Univ.*, 646 F.3d 461, 469-70 (7th Cir. 2011) ("Employers are 'strictly liable' for harassment inflicted by supervisors," but if a "coworker[] [is] culpable for making a work environment hostile, the plaintiff must show that the employer has been negligent either in discovering or remedying the harassment.") (quotation omitted), *cert. granted*, 133 S. Ct. 23 (2012). A supervisor, in this context, "is someone with power to *directly* affect the terms and conditions of the plaintiff's employment," that is to hire, fire, transfer and discipline the employee. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004) (emphasis original).

Viewed favorably to plaintiff, the record shows that: (1) Lee was the program coordinator for the alcohol sting program and was in charge of recruiting participants for it; (2) Lee recruited plaintiff for the program; (3) Lee gave program guidelines to plaintiff that say her "failure to comply with the[] guidelines can and will result in [her] termination from the program"; (4) Lee had plaintiff sign a consent form that states: "I understand that my participation in the program can be terminated at any time by . . . the Enforcement Officer"; and (5) Lee was the only person who supervised plaintiff on alcohol stings and he had complete discretion over when, where and how plaintiff performed the stings. (Def.'s LR 56.1(a) Stmt., Keating Dep. at 45, 48-50, 55-56, 62; *id.*,

11

Keating Dep. Ex. 1 at FP 2236-37; *id.*, Lee Dep. at 60-62, 127; *id.*, Weiler Dep. at 151-54; *id.*, Doe Dep. at 172-76.) This evidence is sufficient to raise a triable issue of fact as to whether Lee was plaintiff's supervisor for the alcohol stings.

In sum, viewed favorably to plaintiff, the record creates a genuine issue of material fact as her Title VII claim related to her work on the alcohol stings. Thus, the Village's motion to dismiss Count IV is denied.

In Count V, plaintiff asserts a claim under the Illinois Gender Violence Act ("IGVA"), which states:

> Any person who has been subjected to gender-related violence . . . may bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence. For purposes of this Section, "perpetrating" means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence.

740 Ill. Comp. Stat. 82/10. The Village argues that municipalities are not among the "person[s]" subject to the IGVA.

Whether that is true depends on the legislature's intent, the best evidence of which is the language of the statute itself. *See In re Madison H.*, 830 N.E.2d 498, 504 (Ill. 2005). The Court gives the words of the statute their plain and ordinary meaning and interprets them in the context of the statute as a whole. *Williams v. Staples*, 804 N.E.2d 489, 493 (Ill. 2004). The Court may also consider the purpose of the law and the "evil it was intended to remedy" in determining legislative intent. *Id.*

"[T]he plain and ordinary meaning of the term person is an individual human being." *People v. Christopherson*, 899 N.E.2d 257, 260 (Ill. 2008) (quotations omitted). That meaning is consistent with the language and stated purpose of the IGVA. The statute defines "gender-related violence"

12

as an act of battery motivated by the victim's sex, an act of battery of a sexual nature done under coercive conditions or a credible threat to commit such an act. 740 Ill. Comp. Stat. 82/5. In addition, it allows victims to sue those who "personally commit[] the gender-related violence" as well as those who "personally encourag[e] or assist[]" in it. 740 Ill. Comp. Stat. 82/10. Finally, the statute's enacting clause says that it was adopted to "provide[] adequate remedies to women survivors of domestic violence and sexual abuse" in light of "studies demonstrat[ing] that women . . . continue to be greatly harmed by gender-related violence . . . , which is disproportionately visited upon women by men, and sexual abuse, which harms many women and children without being reported or prosecuted." 740 Ill. Comp. Stat. 82/1. Accordingly, the Court holds that the term "person" as used in the Act means natural persons. *See Fleming v. Fireside West, LLC*, No. 12 C 1436, 2012 WL 6604642, at *3-4 (N.D. Ill. Dec. 18, 2012) ("To say . . . that the statutory meaning of 'person' may extend to corporate entities, does not mean that it must or even that it usually does[,] [and] the language of [the IGVA] strongly implies that [it] applies only to natural persons.") (quotation and citation omitted).

That leaves Counts VI-VIII, in which plaintiff seeks to hold the Village liable for Lee's alleged assault and battery of her under respondeat superior theory and/or a state indemnification statute. The Village argues that these claims are preempted by the Illinois Workers Compensation Act ("IWCA"), which is the exclusive remedy for accidental injuries sustained by employees in the course of their employment. *See* 820 Ill. Comp. Stat. 305/5(a); *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1225 (Ill. 1990). However, the immunity defense the IWCA provides, "is an affirmative one . . . [,] which is waived if not asserted by [the employer]." *Doyle v. Rhodes*, 461 N.E.2d 382, 386 (Ill. 1984); *see Bobbit v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill.

13

1982) (stating that "an affirmative defense [is] something that generally admits the matters in a complaint but suggests some other reason why there is no right of recovery") (citation omitted). Because the Village has neither pleaded this defense nor made a motion to do so, there is no basis for addressing it.[2]

Alternatively, the Village argues that it cannot be held liable under common law or statute for Lee's alleged torts because he was not acting within the scope of his employment when he committed them. *See* 745 Ill. Comp. Stat. 10/2-302 ("If any claim or action is instituted against an employee of a local public entity based on an injury allegedly arising out of an act or omission occurring within the scope of his employment as such employee, the entity may . . . indemnify the employee or former employee for his court costs or reasonable attorney's fees, or both, incurred in the defense of such claim or action . . . [or] . . . for a judgment based on such claim or action. . . ."); *Wright v. City of Danville*, 675 N.E.2d 110, 117 (Ill. 1996) ("[U]nder a traditional *respondeat superior* analysis, an employer can be liable for the torts of his employee . . . only [if] those torts . . . are committed within the scope of that employment."). Scope of employment is a fact-intensive issue, and thus should be resolved on summary judgment "[o]nly if no reasonable person could conclude from the evidence" that the defendant acted within the scope of his employment. *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 992-93 (Ill. 2007) (quotation omitted). Indeed, in a case involving the alleged sexual misconduct of a police officer, the Seventh Circuit reversed summary judgment for the City of Chicago saying: "The issue of the City's responsibility for the torts of its police officers is a difficult one that the district judge should not have attempted to resolve before

---

[2]Even if the Village had asserted the defense, it would not be a basis for summary judgment because, as discussed above, a factual predicate for the defense, whether plaintiff was a Village employee, must be decided at trial.

the actual facts bearing on the issue were determined." *Doe v. City of Chi.*, 360 F.3d 667, 673 (7th Cir. 2004). The Court will heed the Seventh Circuit's warning and leave the issue of the Village's liability for Lee's alleged torts for trial.

## **Conclusion**

For the reasons set forth above, the Court grants the Village's motion for summary judgment [62] on the § 1983 and Illinois Gender Violence Act claims asserted against it in Counts I-III and V. The motion is otherwise denied. At the next status hearing the parties should be prepared to set a date for filing the final pretrial order and for trial.

**SO ORDERED.**                                    ENTERED:  May 6, 2013

*Ronald A. Guzman*
_____
**HON. RONALD A. GUZMAN**
**United States District Judge**